It seems that the lands in question were originally granted to Henry Cossart, from whom they descended to Christian Frederick Cossart, his son and heir at law. That he, in 1792, made a power of attorney to Frederick W. Marshall, either to sell the lands himself or to appoint some other person attorney in fact for that purpose. That the said Marshall did not dispose of the lands, but nominated and appointed John Michael Graffe attorney of the said Cossart in 1774, with very general powers, as he was authorized to do. That the said Graffe, in 1778, sold the said lands, as the agent of the said Cossart, to Hugh Montgomery (the elder) for £ 2,500, of which he received pounds £ 1,000; and afterwards, in the same year, Hugh Montgomery mortgaged the said lands for 500 years to said Graffe to secure the balance of the debt to him as agent of the unitas fratrum. He died, and Traugott Bagge became his administrator, and in 1784, assigned the said term so mortgaged to Frederick W. Marshall, agent and trustee for the unitas fratrum. He died, but by will devised the lands to Christian Lewis Benzien, in trust for the unitasfratrum, whom, with others in Pennsylvania, he appointed his executors. The said Benzien died in the year _____, and the mortgage term is as this time in his representatives, who are made parties to this suit, and who are entitled (if any person is) to receive the money (118) due upon the mortgage from Hugh Montgomery or representatives. Hugh Montgomery, in 1779, by deed conveyed the lands to John Brown and others, trustees for two infant children, who are also parties to this suit, and by his will directed the money due to the Moravians to be paid; taking it for granted, no doubt, that Cossart had held the lands in trust for them.
The defendants claim the land by virtue of grants which issued from the State in the year _____, either to themselves or those under whom *Page 94 
they claim, and a possession of said lands ever since; and it is taken for granted, without notice of any trust for the Moravians.
Upon this statement of facts, the following questions have been submitted to this Court:
1. Do the deeds from Lord Granville to Henry Cossart express a trust for the unitas fratrum?
2. Can parol evidence be admitted in this case to prove a trust?
3. If parol evidence be admitted, does it prove a trust?
4. If a trust be shown, is it valid and such a trust as supports the allegation of the bill of complainants?
5. Has the interest of Henry Cossart in the lands comprehended within the aforesaid deeds of Lord Granville been transferred to Hugh Montgomery?
6. If the interest of Henry Cossart has been transferred, is there not a plain remedy at law?
7. Are the proper parties before the court?
8. Are the defendants protected by the statute of limitations?
With respect to the first, second, third and fourth questions, we think it unnecessary to give any opinion, because we think it is not competent for the defendants to make that objection. It concerns them not, whether there is a trust for the Moravians or not. Suppose there is not, does it follow that Montgomery, who purchased, the lands, or those claiming under him, are to lose the benefit of that purchase merely because (119) when he executed the mortgage deed to Graffe he considered the balance of the purchase money due by him a debt due the Moravians, when that was not the fact? He, in all probability, became possessed of that opinion from the representations of Graffe, the agent of Cossart. If Graffe made such representations, it was natural for Montgomery to believe him. But whether such idea was held out or not, or whether true and correct or not, is not to interfere with the bona fide purchase made by Montgomery. The purchase money was to be paid to Graffe, or those representing him; and Montgomery, or those representing him, have but little reason to be concerned whether the person entitled to receive it receives it as the agent of Cossart or as the agent of the unitas fratrum. They have it to pay, and are willing to pay it. But after payment they are not bound to see to its application. It therefore seems difficult to discern how the rights of the defendant are to be affected by the solution of the question whether the lands were held in trust for the unitas fratrum
or not. As to them, the inquiry is useless whether the person entitled to receive it pays it over to the Moravians or holds on upon it as the agent of Cossart's heirs. They, the defendants, have as little to do with it as one man can possibly have to do with another man's business. *Page 95 
If Graffe, and other agents of Cossart, have uniformly admitted the trust, and Cossart and his heirs have so long acquiesced, that circumstance, connected with the testimony in the case to prove a trust, may direct the discretion of the person entitled to receive the money, and probably might be deemed sufficient to establish a trust in case of a contest between such person and the unitas fratrum. But on that point, as before observed, no opinion is now given.
The fifth objection raised by the defendants is that the complainants have a plain remedy at law. If that is the case, certainly the bill ought to be dismissed. But to this objection two answers may be given.
The first is that the power of attorney from Marshall to Graffe is so defective as not to enable him to convey the legal title of the lands to Montgomery. However, the lands were purchased by (120) him, and the mortgage deed was executed to Graffe to secure the balance of the purchase money. In this situation things remained from 1778 until the present time. No objection to the sale has ever been made by Cossart or his heirs, or any person interested under him, until now, and such silence must be taken as a confirmation of the contract. If so, Montgomery, having only an equitable interest in the lands, is right in coming into this Court, as such equitable interest would not be noticed by a court of law.
The next answer to that objection is, admitting that the legal title passed from Graffe to Montgomery, that it has been shown that an action at law was brought in Morganton Superior Court in 1784, by the complainants, in which they were nonsuited in 1789. And, indeed, we have abundant reason to believe that such was the temper of those times that Cossart himself, being an alien, or any person claiming under him by deed executed since the commencement of the late war, could not have effected a recovery. Montgomery, however, who conveyed whatever title he had to the land to Graffe, by way of mortgage, and now wishes to redeem that mortgage, ought not to be injured on that account. He, or those claiming under him, wish to possess the lands agreeable to this contract with Graffe, and the legal title is not in them. They have a right to call upon the representatives of Graffe for a reconveyance of the mortgage term, and upon the defendants to deliver up possession and account for the profits, etc. For these reasons we think this Court has jurisdiction, and ought to sustain the bill.
The next objection, namely, that there are not proper parties before the court, has been in a great measure obviated, because, since that objection has been made, new parties have been permitted to be made. It probably would have been more regular if the Attorney-General and the trustees of the University had been made parties. Indeed, that would *Page 96 
have been indispensable if we entertained a doubt on the question whether the lands had been confiscated. Cossart also, no doubt, (121) should have been a party, if within the country; but he is an alien, and, therefore, cannot be made a party.
The next and last objection is that the defendants are protected by the statute of limitations. When suits are brought in this Court, over the subject-matter of which courts of common law, as well as this Court, have jurisdiction, this Court will consider itself as much bound by the statute of limitations as a court of law; but in cases where it has exclusive jurisdiction, as in all cases of trusts, the statute does not stand in the way. Authorities need not be cited to prove this. In the case before us the defendants are charged with having acquired a title from the State, knowing of an equitable title at the same time in the complainants, and that, therefore, they became trustees for them. If that was the fact, the statute shall not afford them protection. If they had not notice, and became possessed of the legal title, they stand in no need of the protection of the statute; because it is a rule, by which this Court professes to be governed, not to deprive an innocent purchaser for valuable consideration of the legal title in favor of a complainant whose claim is an honest but only an equitable one.
But how does the present case stand? Admitting that the defendants had no notice of any trust for the Moravians, yet they do not state that they were ignorant that the lands had been appropriated. They do not deny but that they had a knowledge that a grant had issued to Cossart. But, they say, admitting Cossart to have had a title, they deny that he held in trust for the Moravians. But if they knew that the lands had been appropriated, they knew that they were not the subject of entry, and, therefore, became trustees for all equitable claimants under such appropriation. For these reasons, we think the statute does not apply.
It is true, however, that in cases of this sort, where the complainants have suffered their claims to lie dormant an unreasonable length (122) of time, this Court will lay hold of that circumstance to prevent a decree in their favor. It is apprehended, however, that that circumstance does not exist in the present case. The sale to Montgomery took place in 1778. Immediately after the war a suit was brought in Morganton Superior Court, in which there was a nonsuit in 1789; and in 1793 the present action was brought.
Decree for the complainants.
NOTE. — Upon the second point, see Ingram v. Lanier, 2 N.C. 221;Vann v. Hargett, 22 N.C. 31; Spivey v. Jenkins, 36 N.C. 126.
On the question of the statute of limitations, see Hamilton v. Shepperd,7 N.C. 115; Bell v. Beeman, ibid., 273; Thompson v. Blair, ibid, 583;Jones v. *Page 97 Person, 9 N.C. 269; Falls v. Torrance, 11 N.C. 412; Edwards v.University, 21 N.C. 325.
Cited: S. c., 16 N.C. 225; Barnett v. Woods, 55 N.C. 202; Universityv. Bank, 96 N.C. 288.